**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JOHN M.,

               Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Civil Action No. 20-20676 (SDW)

**OPINION**

March 2, 2022

**WIGENTON**, District Judge.

Before this Court is John M.'s ("Plaintiff") [1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Kevin Kenneally's ("ALJ Kenneally") denial of Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper pursuant to 28 U.S.C § 1391(b).

For the reasons set forth below, this Court **REMANDS** the Commissioner's decision.

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

## I.   PROCEDURAL AND FACTUAL HISTORY

### A.  Procedural History

On June 13, 2018, Plaintiff filed concurrent applications for DIB and SSI alleging disability beginning October 5, 2016, due to myotonic dystrophy and knee pain.  (D.E. 7 (Administrative Record ("R.")) at 183-184.)  Those claims were denied initially on January 16, 2019, and upon reconsideration on February 28, 2019.  (R. 110-114; 120-125.)  At Plaintiff's request, Plaintiff received a hearing before ALJ Kenneally on January 30, 2020, and the ALJ issued his opinion on February 10, 2020, finding that Plaintiff was not disabled.  (R. 10-23; 31-50.)  The Appeals Council denied the request for review on November 9, 2020, making the ALJ's decision the final decision of the Commissioner of Social Security.  (R. 1-4.)  Plaintiff subsequently filed the instant appeal in this Court.  (D.E. 1).  The parties timely completed briefing and Plaintiff did not file a reply. (D.E. 10 and 11).

### B.  Factual History[2]

Plaintiff has a date of birth of December 12, 1981.  (*See* R. 33.)  Plaintiff is currently living in Harrington Park, New Jersey with his father and three siblings.  (R. 33-34.)  Plaintiff has a high school education and did not complete any type of specialized job training, trade, or vocational school.  (R. 221.)  Plaintiff worked part-time as a pizza delivery driver from March 2015 to October 2016.[3]  (*Id.*)  Plaintiff's job required him to walk six hours, stand two hours, sit two hours, and lift food up to twenty pounds daily.  (R. 222.)  Plaintiff stopped working due to his diagnosis of congenital myotonic dystrophy which causes, *inter alia*, right knee pain, right leg muscle atrophy,

---

[2] Plaintiff submitted six disability reports (R. 216-227, 244-251, 254-261), a function report dated November 24, 2018, (R. 228-235), and a third-party function report (R. 236-243), which detailed Plaintiff's ability to perform daily activities, including completing various light household tasks and maintaining a minimal social life. The disability reports are dated November 9, 2018, November 14, 2018, February 21, 2019 (two reports), and March 14, 2019 (two reports).

[3] ALJ Kenneally opined that Plaintiff's occupation did not qualify as past relevant work.  (*See* R. 21-22, 33.)

and difficulty grasping and manipulating objects with his hands.  (R. 34-36.)  The following is a summary of the medical evidence.

### C.  Medical History

In February 2018, Plaintiff sought treatment with neurologist, Philippe Douyon, M.D., ("Dr. Douyon") due to his difficulty walking for the last four months.  (R. 311-312.)  Prior to seeing Dr. Douyon, an MRI of Plaintiff's right knee revealed that Plaintiff had severe chronic atrophy of the medial head of the quadriceps muscle.  (R. 311-312, 318.)  Dr. Douyon observed, *inter alia*, that Plaintiff had drooping eyelids, bilateral temporal muscle wasting, right quadricep atrophy, 4/5 right hip strength, bilateral grip weakness, and antalgic gait.  (R. 311-312.)  Dr. Douyon further noted that Plaintiff was obese and sitting comfortably.  (*Id.*)  Dr. Douyon ordered Plaintiff to undergo Electromyography ("EMG") testing, which ultimately confirmed Dr. Douyon's diagnosis of myotonic dystrophy.  (R. 302-305, 311-312, 314.)  Based upon his examination, Dr. Douyon opined that Plaintiff's ability to participate in gainful employment or occupational trainings were limited because Plaintiff's diagnosis of myotonic dystrophy caused "gradual worsening muscle loss and weakness."  (R. 314.)

At the recommendation of Dr. Douyon, Plaintiff began physical therapy treatment on March 13, 2018.  (R. 285-301.)  In April 2018, Plaintiff reported to Linda Hettinger, APN that he had knee pain after he tripped and fell on a carpet.  (R. 321-322.)  Examination notes demonstrated that Plaintiff had no appreciable edema; no erythema, or tenderness with palpation; and his pulses and sensation were intact.  (R. 321-322.)  On May 2, 2018, Plaintiff completed his twelfth and final physical therapy treatment.  (R. 285-301.)  Plaintiff's physical therapy progress report and discharge summary revealed that Plaintiff improved his flexibility, hip strength, and abdominal strength.  (R. 285-301.)

On January 3, 2019, Plaintiff was referred to see consultative examiners, Rashel Potashnik, M.D. FAAPMR ("Dr. Potashnik") and Betty Vekhnis, M.D. FAAPMR ("Dr. Vekhnis"). (R. 340-347.) Upon physical examination, Dr. Potashnik noted that Plaintiff "walked into the office without an assistive device, he was stable in Romberg, he didn't walk tandem." (R. 341.) Dr. Potashnik further noted that Plaintiff was obese; had no dysarthria or visible atrophy; 5/5 motor strength in his upper extremities; 4-/5 strength in his lower extremities; did not use an assistive device; and had depressed reflexes in both the upper and lower extremities. (R. 340-341.) Examination notes further demonstrated that Plaintiff could "use both hands for fine and gross motor manipulations".[4] (R. 341.) Thereafter, on February 20, 2019, Plaintiff also sought treatment with neurologist James Ko, M.D., of Bergen Neurology Consultants. (R. 348-350.) Dr. Ko confirmed Plaintiff's diagnosis of myotonic dystrophy noting bilateral ptosis, as well as muscle weakness and reflex loss in the upper and lower extremities. (R. 348-350.) Dr. Ko determined that Plaintiff had normal facial strength, sensation, gait, coordination, and that Plaintiff had a "[f]ull, painless range of motion of all major muscle groups and joints." (R. 348-350.)

On January 16, 2019, state agency physician Joseph Sobelman, M.D., reviewed the record and found that Plaintiff could lift up to 10 pounds; sit, stand, or walk six hours in an eight-hour day; frequently climb ramps or stairs; occasionally climb ladders, balance, stoop, kneel, crouch, and crawl; and may frequently handle and finger. (R. 52-63, 65-76.) Subsequently, on or about February 25, 2019, state agency physician Caroline Shubeck, M.D., similarly found that Plaintiff could lift up to 10 pounds; sit for six hours in an eight-hour workday; stand or walk for four hours in an eight-hour workday; occasionally climb ramps/stairs; never crawl or climb ladders, ropes, or

---

[4] ALJ Kenneally noted that Dr. Potashnik's opinion was only partially persuasive because Dr. Potashnik did not conduct a full, function-by-function exam. (R. 21.)

scaffolds; occasionally balance, stoop, or crouch; and may frequently handle and finger. (R. 78-90, 92-104.)

### D. Hearing Testimony

At the administrative hearing on January 30, 2020, Plaintiff was represented by counsel. (R. 31.) ALJ Kenneally heard testimony from Plaintiff and an impartial vocational expert, Wayne Blake ("VE Blake").  (*See generally* R. 31-51.)

Plaintiff testified that he had not worked at all since October 5, 2016, due to myotonic dystrophy making it difficult for him to walk, stand, or move.  (R. 34-36.)  Plaintiff testified, among other things, that he experienced pain and stiffness in his right leg, difficulty balancing and picking up objects. (R.  35-37, 40-41.)  While not medically prescribed by a physician, Plaintiff testified that he needed to use a cane to walk daily in and outside the home.  (R. 36.)  Plaintiff further testified that he needed to elevate his right leg while sitting and that he could not sit for more than thirty minutes at a time.  (R. 38-39.)  Plaintiff further testified that he could not stand for more than a minute without using his cane.  (R. 39.)  Plaintiff underwent physical therapy, which he testified had some helpful effect.  (R. 35.)

VE Blake testified that there were sedentary unskilled jobs in the national economy that a person with Plaintiff's age, education, work experience, and RFC limitations, as found by ALJ Kenneally, could perform such as addresser, document preparer, and cutter and paster of press clippings.  (R. 45.)  ALJ Kenneally subsequently asked the VE whether a person with Plaintiff's age, education, work experience, and RFC limitations could perform the same jobs if they were off task twenty percent of the time in an eight-hour workday and absent from work two days in a month.  (R. 45.)  VE Blake responded that such person would not be able to perform such jobs. (R. 46.)  VE Blake further testified that use of a cane in the non-dominant right hand for standing

and walking would not affect such sedentary job opportunities, but an individual's need to elevate his foot to ninety degrees while sitting would eliminate all job opportunities.   (R. 47-48.)

## II.   <u>LEGAL STANDARD</u>

### A.  **Standard of Review**

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).  This Court is required to give

substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B. The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological

abnormalities which could reasonably be expected to produce the pain or other symptoms alleged."
42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis.  20
C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480.  If the ALJ determines at
any step that the claimant is or is not disabled, the ALJ does not proceed to the next step.  20 C.F.R.
§§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial
gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as
work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or
profit." 20 C.F.R. §§ 404.1510, 416.910.  If the claimant engages in SGA, the claimant is not
disabled for purposes of receiving social security benefits regardless of the severity of the
claimant's impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the individual is
not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment
or combination of impairments that meets the duration requirement found in Sections 404.1509
and 416.909.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or a combination
of impairments is not severe when medical and other evidence establishes only a slight abnormality
or combination of abnormalities that would have a minimal effect on an individual's ability to
work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  An
impairment or a combination of impairments is severe when it significantly limits the claimant's
"physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).  If
a severe impairment or combination of impairments is not found, the claimant is not disabled.  20

C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).   An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

III.   **DISCUSSION**

  **A.  The ALJ's Decision**

On February 10, 2020, ALJ Kenneally issued a decision concluding that Plaintiff was not disabled from October 5, 2016, through the date of the ALJ's decision.  (R. 10-23.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 5, 2016, Plaintiff's alleged onset date.  (R. 15.)  At step two, the ALJ found that Plaintiff had the following severe impairments: myotonic dystrophy with right leg knee atrophy, and obesity.  (R. 15.)

At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any medical listing, even with his obesity factored in.  (R. 17-20.)  The ALJ evaluated Plaintiff's impairments under medical listing 1.02, which concerns impairments of the musculoskeletal system.  (R. 18.)  Medical listing 1.02 provides, in pertinent part, that major dysfunction of the joints is characterized by:

> [G]ross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00 B2b[…]
>
> 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.02.

10

Pursuant to medical listing 1.00(B)(2)(b), the "inability to ambulate effectively means an extreme limitation of the ability to walk." *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00(B)(2)(b)(1). Generally, ineffective ambulation is defined as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held device that limits the function of both extremities, such as the inability to walk without the use of a walker, two crutches or two canes, and the inability to walk a block at a reasonable pace on rough or uneven surfaces. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00(B)(2)(b)(2).

Based upon the record, the ALJ found that Plaintiff's impairments did not meet the requirements of medical listing 1.02 for major dysfunction of the joints because the record did not show any evidence of Plaintiff's inability to ambulate effectively. (R. 17-18.) Plaintiff's examination notes from Dr. Douyon demonstrated that he had bilateral temporal muscle wasting, atrophy, and antalgic gait. (R. 312.) However, there was no indication that Plaintiff needed or used an assistive device. (R. 311-312, 314.) Treatment notes from Dr. Potashnik, Dr. Vekhnis, and Dr. Ko showed that Plaintiff had reduced reflexes in the upper and lower extremities, but that there was no presence of abnormal gait or use of an assistive device by Plaintiff. (R. 340-3450.) The ALJ noted that Plaintiff testified to needing a cane to walk, despite not being medically prescribed to use one. (R. 36.) ALJ Kenneally concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 19.) However, the clinical and diagnostic evidence as a whole indicated that Plaintiff could perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations:

> (1) he can occasionally push, pull, or operate hand controls with the bilateral upper extremities; (2) he can never push, pull, operate foot controls with the right lower extremity; and (3) he can frequently handle, finger, and feel bimanually; (4) he can occasionally climb ramps and stairs; (5) he can never climb ropes, ladders, or scaffolds; (6) he can occasionally balance and stoop; (7) he can never kneel, crouch,

or crawl; (8) he can never be exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle; and (9) he can have only occasional exposure to extreme cold and extreme heat.

(R. 18-21.)

At step four, the ALJ found that Plaintiff did not have past relevant work.  (R. 21.)  At step five, considering the claimant's age, education, work experience, residual functional capacity, and the vocational expert's testimony, the ALJ found that there was a significant number of sedentary jobs in the national economy that Plaintiff could perform, such as an addresser, document preparer, or cutter and paster.  (R. 22-23.)  Based on the foregoing, the ALJ found Plaintiff was not disabled. (R. 23.)

## B.  Analysis

On appeal, Plaintiff seeks reversal of the Commissioner's decision for two reasons. (D.E. 10.)  First, Plaintiff asserts that the ALJ failed at step three by applying medical listing 1.02 because medical listing 1.02 is applicable to major dysfunction of the peripheral joint, not muscular dystrophy or myotonic dystrophy.  (D.E. 10 at 9-15.)  Plaintiff further asserts that pursuant to the Commissioner's Program Operations Manual System ("POMS") for Congenital Myotonic Dystrophy, SSA POMS DI 23022.143, the ALJ was required to consider Plaintiff's myotonic dystrophy under medical listing 11.13.  (D.E. 10 at 9-15.)  Second, Plaintiff claims that the ALJ's RFC findings were not supported by substantial evidence.  (D.E. 10 at 15-17.)  This Court has considered the arguments and finds that the ALJ should analyze Plaintiff's impairments under medical listing 11.13 to determine whether Plaintiff's impairments equal to or exceed medical listing 11.13.[5]

---

[5] The Court finds that ALJ Kenneally's analysis was proper and supported by substantial evidence as to steps one, two, four, and five. Thus, the Court need only address ALJ Kenneally's analysis at step 3.

While this Court recognizes that the application of the POMS was not required at the time of ALJ Kenneally's decision because the POMS was not effective until six-months after (*See* R. 13-23), the Commissioner has since identified medical listings 11.13 and 111.13 as the most appropriate listings to evaluate Plaintiff's congenital myotonic dystrophy under the POMS.  *See* SSA POMS DI 23022.143.  Under the POMS, congenital myotonic dystrophy is the most severe form of myotonic dystrophy, a rare inherited neurological disorder, with symptoms including severe muscle weakness.  (*Id.*)  The diagnosis of myotonic dystrophy can be confirmed through EMG testing, as well as physical examination findings demonstrating general muscle weakness. (*Id.*)  Medical listing 11.13A states that muscular dystrophy is the:

> D]isorganization of motor function in two extremities (see 11.00D1) resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities[.]

> 20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.13A.

> Specifically, medical listing 11.00D2 defines extreme limitations as follows:

> a. Inability to stand up from a seated position means that once seated you are unable to stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes.
> b. Inability to maintain balance in a standing position means that you are unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes.
> c. Inability to use your upper extremities means that you have a loss of function of both upper extremities (including fingers, wrists, hands, arms, and shoulders) that very seriously limits your ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements. Inability to perform fine and gross motor movements could include not being able to pinch, manipulate, and use your fingers; or not being able to use your hands, arms, and shoulders to perform gross motor movements, such as handling, gripping, grasping, holding, turning, and reaching; or not being able to engage in exertional movements such a lifting, carrying, pushing, and pulling.

> 20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.00D2(a)-(c).

Here, remand is appropriate to allow the ALJ to evaluate Plaintiff's impairments under medical listing 11.13. *See Dobrowolsky v. Califano*, 606 F.2d at 407 (quoting *Saldana v. Weinberger*, 421 F. Supp. at 1131) (explaining that remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.") The record establishes that Plaintiff was diagnosed with myotonic dystrophy, which was confirmed through EMG testing and physical examinations. (R. 302-305, 311-312, 314, 318, 340-341, 350.) Medical records demonstrate the presence of severe chronic atrophy; depressed reflexes in the upper and lower extremities; muscle weakness in the upper and lower extremities; bilateral temporal muscle wasting; and general grip weakness. (*See generally* R. 311-312, 314, 340-341, 348-350.) Plaintiff testified to pain and stiffness in his right leg, as well as difficulty balancing and picking up objects. (R. 35-37, 40-41.) While medical records do not indicate that Plaintiff used or needed an assistive device to walk, Plaintiff testified to needing a cane to walk daily. (R. 36-39, 340-341, 348-350.) Based upon Plaintiff's evidenced limitations in the upper and lower extremities, the ALJ should evaluate Plaintiff's impairments under medical listing 11.13.

ALJ Kenneally's analysis under step three heavily focused on Plaintiff's ability to ambulate effectively. (R. 17-21.) The ALJ relied upon medical records evidencing that Plaintiff had no gait abnormality or need for an assistive device to walk. (R. 17-21.) The ALJ's analysis did not weigh the medical records evidencing Plaintiff's limitations and loss of function in his upper and lower extremities under the requirements of medical listing 11.13. Because of Plaintiff's diagnosis of myotonic dystrophy, the ALJ should analyze Plaintiff's impairments under medical listing 11.13. The Court notes that ALJ Kenneally's failure to evaluate Plaintiff's impairment under medical listing 11.13 was not harmless error and thus requires remand.

14

Accordingly, reviewing the ALJ's decision and the record as a whole, the ALJ should re-analyze step three to determine whether Plaintiff's impairments equal to or exceed medical listing 11.13.  To the extent further analysis under medical listing 11.13 alters the other steps, the ALJ should address same on remand.

**IV.**   <u>**CONCLUSION**</u>

For the reasons stated above, ALJ Kenneally's denial of Plaintiff's claims for SSI and Disability Insurance Benefits are **REMANDED** for further evaluation consistent with this opinion. An appropriate Order follows.


<u>s/ *Susan D. Wigenton*</u>
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**


Orig:   Clerk
cc:     Parties

15